## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERICKY BOGUES, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. CCB-20-829 |
| HOLLY HOOVER, *NP*, | * | |
| CO II DOLLY, | | |
| CO II SPENCER, | * | |
| CO II J. STROPE, | | |
| SGT. HAER, | * | |
| CO II C. GILPIN, | | |
| NURSE MIKE, | * | |
| SGT. DURST, | | |
| CO II J. BROADWATER, and | * | |
| S. JOHNSON, *Case Manager*, | | |
| | * | |
| Defendants | | |

***

## <u>MEMORANDUM OPINION</u>

Self-represented plaintiff Ericky Bogues, currently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, brought this civil action pursuant to 42 U.S.C. § 1983 against Holly Hoover, NP and Michael Klepitch, RN (collectively, the "Medical Defendants"), NBCI Correctional Officers Corey Dolly, Kevin Spencer, James Strope, Cody Gilpin, Justin Broadwater, Sgt. Cody Haer, Sgt. Keith Durst, and Correctional Case Management Specialist Mary S. Johnson (collectively, the "Correctional Defendants").[1]  ECF Nos. 1, 16. Plaintiff alleges violations of his constitutional rights under the Eighth Amendment and seeks $250,000 in punitive and compensatory damages.  ECF No. 1 at 3.

The Medical and Correctional Defendants filed motions to dismiss or, in the alternative, for summary judgment.  ECF Nos. 12, 17, 26.  Plaintiff was informed by the court, pursuant to

---

[1] The Clerk shall be directed to amend the docket to reflect defendants' full names.

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion could result in dismissal of the complaint.  ECF Nos. 14, 18, 27.  Plaintiff renewed his Motion for Production of Documents (ECF No. 22),[2] which the court previously denied (ECF Nos. 4, 6), but did not oppose the motions filed by defendants.

A hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons explained below, the court will grant the Medical and Correctional Defendants' motions, construing both as motions for summary judgment.  As no scheduling order has been entered and there has been no order issued by the court with respect to discovery, plaintiff's Motion for Production of Documents, construed as a Motion for Discovery, shall be denied.  *See* Local Rule 104.4 (D. Md. 2018).

## Background

### A.    Plaintiff's Allegations

In his initial complaint, plaintiff claims that on January 10, 2020, Officer Spencer refused to give him lunch, stating that plaintiff did not deserve it.  Compl., ECF No. 1 at 2.  Plaintiff reported this to Officer Dolly, who told plaintiff to "break the sprinkler" to get the sergeant's attention.  ECF No. 1-1 at 1.  After plaintiff broke the sprinkler in his cell, he was removed and placed in the Rec Hall education booth.  *Id.*  Officers Dolly and Strope then opened the booth door, allowing cold air to come in.  *Id.*  Because plaintiff was only wearing boxer shorts and shoes, he was cold and began to cough.  *Id.*  The officers believed that plaintiff was trying to spit on them; therefore, Officer Dolly sprayed him with mace and Sgt. Haer arrived to place a spit mask on his face.  *Id.* at 1–2.  The officers brought plaintiff to the medical room and began to strike him on the

---

[2] Plaintiff seeks copies of grievances he has filed against defendants; copies of policies and directives regarding the use of teargas, use of force, and the sick call process at NBCI; and video footage from January 10, 2020.  ECF No. 22.  The court notes that some of these documents were provided by the Correctional Defendants as exhibits to their dispositive motion.  *See* ECF No. 26.

head, back, and ribs with closed fists. *Id.* at 2. Officer Gilpin joined in striking plaintiff, while NP Hoover refused to help. *Id.* Following the incident, plaintiff waited for a medical evaluation for approximately one hour, but the Medical Defendants refused to treat his "pain and suffer[ing] from mace and attack," saying that "it's not a medical problem." *Id.*

Plaintiff filed an amended complaint adding Sgt. Durst, Officer Broadwater, and Case Manager Johnson as defendants. Am. Compl., ECF No. 16. Plaintiff claims that after he filed grievances against NBCI staff, Johnson retaliated by increasing his security classification from Max I to Max II. *Id.* at 1–2. In addition, Officers Gilpin and Broadwater told other inmates that plaintiff was a "rat," thus subjecting him to harm. *Id.* at 2. Plaintiff also alleges that NBCI officers issued false tickets against him on January 25, 2019, March 26, 2019, and April 25, 2020, and that his lockup times were improperly extended from March 25 to March 26, 2019, from November 24 to December 4, 2019, and from April 8 to April 21, 2020. *Id.* at 3–4. He states that after initiating this lawsuit, Sgt. Haer and Officer Gilpin threatened to kill him. *Id.* at 4.

Lastly, plaintiff claims that on April 12, 2020, Officer Dolly slammed his hand against the metal slot while trying to grab plaintiff's lunch tray. *Id.* at 5. Plaintiff suffered a cut on his hand. *Id.* Plaintiff states that he was not taken to the medical unit, and that Officer Dolly and another correctional officer gave him band aids. *Id.*

## B.    Defendants' Response

A Use of Force ("UOF") Report submitted by the Acting Warden at NBCI reflects that on the morning of January 10, 2020, plaintiff damaged the fire suppression system in his assigned cell, and he received an infraction for damaging security equipment. UOF Report, ECF No. 26-5 at 2-3. While repairs were made to the cell, plaintiff was taken to the housing unit's dayroom and secured in an education booth. *Id.* at 3. At approximately 11:24 a.m., when Officers Strope and

Dolly approached plaintiff to return him to his cell, plaintiff "abruptly spit" in the direction of the officers, narrowly missing them.  *Id.*  As plaintiff "began to clear his throat in order to spit again," Officer Strope deployed pepper spray towards plaintiff "to prevent another assault."  *Id.*  Officers Strope and Dolly informed the NBCI Officer-in-Charge of the situation via radio, and Sgt. Haer arrived on the scene with a spit mask, which he placed on plaintiff.  *Id.*

Sgt. Haer and Officer Strope handcuffed plaintiff and brought him to the medical unit for a medical evaluation.  *Id.*  Just as NP Hoover[3] arrived, she was immediately summoned to a different housing unit for a medical emergency.  *Id.*  Thus, plaintiff was escorted from the medical room and secured in a strip cage, where Officer Strope conducted a strip search.  *Id.*  No contraband was discovered, and plaintiff refused to provide a written or verbal statement.  *Id.*  Between 11:52 a.m. and 12:57 p.m., Sgt. Haer took photographs of plaintiff, plaintiff's hands and spittle, Officers Strope and Dolly, and himself, for inclusion in the UOF Report.  *Id.* 19–24.

Plaintiff's medical records reflect that he was seen by the Medical Defendants in a holding cell at approximately 2:27 p.m.  Med. Records, ECF No. 12-5 at 1.  Plaintiff, who was wearing a spit mask, appeared alert and oriented with good color and warm, dry skin.  *Id.*  Plaintiff reported no injuries, nor did the Medical Defendants see any.  *Id.*  Plaintiff did not want to be assessed by the medical staff at that time.  *Id.*  As such, the Medical Defendants completed a release of responsibility form and directed plaintiff to use the sick call process if needed.  *Id.* at 1–3.  The Medical Defendants did not note and do not recall that plaintiff was sprayed with mace.  Decl. of Hoover, ECF No. 12-4 at 3 ¶ 8; Decl. of Klepitch, ECF No. 12-7 at 2 ¶ 6.  NP Hoover also states that she did not witness, nor was she aware of, correctional officers assaulting plaintiff.  ECF No. 12-4 at 3 ¶ 9.

---

[3] At the time of the incident, NP Hoover's last name was Pierce.

Officer Dolly wrote an infraction that same day, charging plaintiff with violation of inmate rule #116 ("possess, misuse, tamper with, damage, or destroy security equipment or property, detection equipment, or fire suppression equipment or alarm").  Notice of Inmate Rule Violation, ECF No. 26-7 at 1.  On January 13, 2020, Officer Strope wrote an infraction charging plaintiff with violation of inmate rule #101 ("commit assault or battery on staff").  *Id.* at 4.  Lt. Jeremy Crites, who was assigned to investigate the UOF incident, determined that the level of force used by staff was justified and complied with all applicable Department of Public Safety and Correctional Services ("DPSCS") policies and the UOF Manual.  ECF No. 26-5 at p. 4.

Following the incident, plaintiff was placed on Staff Alert status.  *Id.*  During his first Staff Alert review on January 13, 2020, plaintiff was disrespectful towards staff; therefore, he remained on that status.  Staff Alert Designation, ECF No. 26-12.  On January 15, 2020, plaintiff was compliant with procedures and was removed from Staff Alert.  *Id.* at 3.  Plaintiff waived his appearance at his adjustment hearing held on January 28, 2020 and pleaded guilty to violation of rules #101 and #116.  ECF No. 26-7 at 7.  In exchange, he received a disciplinary segregation sentence of 90 days and loss of 180 days of good conduct credits, both of which were affirmed by the Warden on February 24, 2020.  *Id.* at 7–16.

Officer Spencer states that he did not deny plaintiff his meal on January 10, 2020.  Decl. of Spencer, ECF No. 26-13 at ¶ 3.  Rather, Officer Spencer provided plaintiff with his meal tray and plaintiff "became agitated when [Officer Spencer] refused to give him 2 or 3 extra[] meal trays to eat."  *Id.*  Dolly states that he never advised plaintiff to break the sprinkler head off if he did not receive his meal.  Decl. of Dolly, ECF No. 26-9 at ¶ 3.  In addition, Officers Dolly and Strope state that they did not open the housing unit exit doors located near the education booth.  *Id.* at ¶8; Decl. of Strope, ECF No. 26-8 at ¶ 8; Decl. of Dolly, ECF No. 26-9 at ¶ 8.  Those doors are controlled

by the control center and are frequently opened and closed to allow for entry and exit in the housing unit. *Id.* Leaving the doors open would violate security operations. *Id.*

Officers Dolly and Strope deny assaulting plaintiff on January 10, 2020 and did not witness any other officer do so. ECF No. 26-9 at ¶ 9; ECF No. 26-8 at ¶ 9. Officer Gilpin states that he was not involved in the incident on that day and did not strike plaintiff at any time. Decl. of Gilpin, ECF No. 26-15 at ¶ 3. He and Officer Broadwater also deny telling other inmates that plaintiff was a "rat." *Id.* at ¶ 4; Decl. of Broadwater, ECF No. 26-18 at ¶ 3. Furthermore, Officer Dolly states that he did not slam plaintiff's hand in the food slot on April 12, 2020. ECF No. 26-9 at ¶ 10.

With regard to plaintiff's claims that NBCI staff issued false tickets against him, Officer Broadwater states that plaintiff received a notice of infraction ("NOI") on March 26, 2019 after he verbally threatened staff, stating "I am going to kill one of ya'll bitches." *See* ECF No. 26-18 at at ¶4); Offender Case Management System, ECF No. 26-16 at 1. Plaintiff accepted a plea agreement at his adjustment hearing on April 2, 2019 and received 75 days of disciplinary segregation. *Id.*

Plaintiff received another NOI on July 30, 2019, when he and another inmate were observed assaulting each other with a liquid substance. ECF No. 26-18 at ¶ 5. Plaintiff was found guilty of the infraction and received an additional disciplinary segregation sentence of 120 days. *See id.*; ECF No. 26-16 at 1. Although plaintiff's disciplinary segregation sentence expired on November 26, 2019, he remained in the same housing unit because he was assigned to the Maximum Security II ("Max II") - Structured Housing program. *See* ECF No. 26-18 at ¶ 6; ECF 26-16 at 1.

Plaintiff received another NOI on December 4, 2019 for violation of inmate rule #316

(disobeying an order).  *See* ECF No. 26-18 at ¶ 7; ECF No. 26-16 at 1.  Upon the completion of his disciplinary segregation sentence on April 8, 2020, plaintiff again remained in the same housing unit due to his assignment to Max II-Structured Housing.  *See* Decl. of Durst, ECF No. 26-14 at ¶ 3; ECF No. 26-16 at 1.

Plaintiff received another NOI on April 24, 2020 for refusing to allow an officer to secure the security slot in his cell while stating, "I'll kill you bitch, that's what I do."  Decl. of Crites, ECF No. 26-17 at ¶ 4; ECF No. 26-16 at 1.  Plaintiff waived his appearance at the adjustment hearing and accepted a plea agreement.  *Id.*

Defendant Johnson, a Correctional Case Management Specialist II, states that plaintiff was originally increased to Max II security level on June 9, 2014.  Decl. of Johnson, ECF No. 26-19 at ¶ 3.  On June 23, 2016, plaintiff's security level was decreased to Max I, following his successful completion of the Behavior Management Program, and an overall improvement in his institutional behavior.  *Id.* at ¶ 4.  However, it was returned to Max II on June 26, 2017 after plaintiff's involvement in a large gang-related fight that resulted in an inmate's death.  *Id.* at ¶ 5; Notice of Assignment to Administrative Segregation, ECF No. 26-22 at 2.  Since that time, plaintiff has received 12 additional infractions.  ECF No. 26-19 at ¶ 6.

On December 13, 2018, plaintiff was assigned to Max II Structured Housing, a program assignment designed to help inmates assigned to the Max II security level to progress to Max I. *Id.* at ¶ 7).  Johnson was not part of the Case Management Team that reviewed this assignment, and plaintiff has not been on Johnson's caseload since December 2018.  *Id.* at ¶ 8; *see also* Case Management Assignment Sheet, ECF No. 26-24.

Plaintiff filed a total of 172 ARPs at NBCI between November 25, 2009, and June 5, 2020. *See* ARP Index, ECF No. 26-25.  Although 14 of those ARPs were filed after January 10, 2020,

none of them pertained to the claims raised in this case.  *Id.*  A search of records at the Inmate Grievance Office did not reveal any grievances filed by plaintiff pertaining to an alleged assault or excessive use of force on January10, 2020.  Decl. of Pamela White, Admin. Aide for DPSCS Inmate Grievance Office, ECF No. 26-26.

## Standards of Review

The Medical and Correctional Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).  Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Id.* at 261.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (citation omitted).  To

raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

The court shall treat defendants' motions as motions for summary judgment.  Because the Medical and Correctional Defendants filed motions titled as motions to dismiss or for summary judgment along with documents in support, plaintiff was on notice that the court could treat the motions as ones for summary judgment and rule on that basis.  Although plaintiff moved for the production of documents, he did not file his motion pursuant to Rule 56(d), nor did he allege that he cannot present facts essential to justify his opposition without formal discovery.  *See* ECF No. 22.  Accordingly, the court will review plaintiff's claims against all defendants under the Rule 56(a) standard.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all

reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## Analysis

### I.   Medical Defendants

Plaintiff's claims against the Medical Defendant raise whether he has been denied adequate medical treatment in violation of the Eighth Amendment to the United States Constitution.  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant, or the defendant's failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)); *see also Scinto v.*

*Stansberry*, 841 F.3d at 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Here, the record does not support a finding that plaintiff suffered a serious medical need that went unaddressed on January 10, 2020. Specifically, his unsupported claim that the Medical Defendants refused to treat his "pain and suffer[ing] from mace and attack" is disputed by the verified medical records, which indicate that the Medical Defendants saw plaintiff and noted that he appeared alert and oriented with good color and warm, dry skin. He reported no injuries, and

the Medical Defendants did not see any.  Moreover, even assuming that plaintiff had visible injuries at the time of his initial encounter with the Medical Defendants, he fails to show that their conduct amounted to deliberate indifference because he refused a medical evaluation at that time. Thus, viewing the evidence in the light most favorable to plaintiff, there is no indication that the Medical Defendants exhibited a callous disregard for a serious medical need, *see Estelle*, 429 U.S. at 105–06, and they are entitled to summary judgment on this claim.

## II.   Correctional Defendants

### A.  Excessive force

Plaintiff claims that the defendant correctional officers used excessive force when they placed him in a cold booth, sprayed him with mace, physically assaulted him in the medical unit, and when Officer Dolly slammed his hand in his cell's food slot.  Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.  The court must look at the need for the application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  The absence of significant injury, alone, is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  The extent of injury incurred is one factor whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Here, the record reflects that Officer Strope deployed pepper spray on plaintiff after plaintiff attempted to spit on Officers Strope and Dolly, and began to clear his throat in order to

spit again.  The UOF Report confirms that Officer Strope used pepper spray in order to gain control of the situation.  Thus, it appears that any force used at that time was applied in a good faith effort to restore discipline.  *See, e.g.*, *Kitchen v. Ickes*, 116 F. Supp. 613, 628 (D. Md. 2015) (application of two bursts of pepper spray not excessive in relation to need to prevent the plaintiff from further assaulting his cellmate).

Plaintiff's remaining unsupported allegations are contradicted by the Correctional Defendants' verified declarations stating that plaintiff was not purposefully placed in a cold booth while his cell was repaired, and that correctional officers did not attack him in the medical unit or injure his hand in his cell's food slot.  As stated above, plaintiff was seen by medical staff after he was escorted from the education booth and he reported no injuries at that time, nor did the Medical Defendants see any.  As such, the Correctional Officers are entitled to summary judgment on plaintiff's excessive force claims.

### B. Retaliation

To the extent plaintiff avers that the Correctional Defendants retaliated against him through reclassification, verbal threats, and calling him a rat, he must establish three elements: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.'" *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 479, 499 (4th Cir. 2005)) (alterations omitted). Although retaliation is not expressly referred to in the Constitution, it is nonetheless actionable because such conduct tends to chill an individual's exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (recognizing that government may not deny a benefit on a basis that infringes a constitutionally protected interest).  If there is no

impairment of a plaintiff's rights, however, there is no need for the protection provided by a cause of action for retaliation.  Thus, a showing of adversity is essential to any retaliation claim.  *Id.* at 599 (citing *Board of Regents v. Roth*, 408 U.S. 564, 576–78 (1972)).

To state a prima facie claim of retaliation, plaintiff has the burden of setting forth facts that would show that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind defendants' allegedly improper conduct.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  In the prison context, the plaintiff must establish that the prison authorities' retaliatory action did not advance the institution's legitimate goals of preserving internal order and discipline, or that it was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (citations omitted).  The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution.  *Id*. at 532. Claims of retaliation in the prison context are treated with skepticism "because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'"  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Taking the evidence in the light most favorable to plaintiff, he has not established retaliation on the part of the Correctional Defendants.  First, he has failed to show that he suffered adverse action that deterred him from exercising a constitutional right.  The DPSCS records reflect that following the January 10, 2020 incident, he filed at least 14 ARPs at NBCI.  Second, plaintiff has not shown a connection between the filing of any grievances and the alleged adverse action. As Johnson indicated, plaintiff has been classified as Max II since 2017, and he had not been on Johnson's caseload since his assignment to Max II Structured Housing in December 2018.  Thus,

plaintiff fails to establish impermissible retaliation, and the Correctional Defendants are entitled to summary judgment on this claim.

### C. Due process

Plaintiff's remaining claims, asserting that the Correctional Defendants issued false tickets and impermissibly extended his time in segregation, is construed as an alleged violation of his due process rights.  A prisoner, however, "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."  *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  And, to the extent plaintiff alleges that the Correctional Defendants failed to follow prison directives or regulations, the failure does not, in and of itself, establish a violation of due process.  *See Kitchen*, 116 F. Supp. 3d at 629 & n.6.  Where a state has created internal prison procedures, the procedural protections of the Due Process Clause apply only to actions that implicate a protected liberty interest, such as those that result in the loss of good time credits, *see Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993), as well as those that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 477–78, 483–84 (1995).

Here, plaintiff accepted plea agreements regarding his NOIs. His confinement to disciplinary segregation following those guilty pleas was not a "significant hardship . . . in relation to the ordinary incidents of prison life."  *Id*.  Based on this record, plaintiff fails to show a due process violation, and the court will grant summary judgment in favor of the Correctional Defendants on this claim.

### Conclusion

The Medical and Correctional Defendants' Motions, construed as motions for summary judgment, will be granted.  Plaintiff's Motion for Production of Documents, construed as a Motion

for Discovery, will be denied.

A separate Order follows.


\_3/18/2021_____                    \_/S/_____
Date                                                            Catherine C. Blake
                                                                      United States District Judge

16